IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| N2 SELECT, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) |
| N2 GLOBAL SOLUTIONS, INC., <br> SERVE: 160 East 89th Street, PMB 4C, <br> New York, NY 10128 | ) Case No.: <br> ) JURY TRIAL DEMANDED |
| PAUL AMELIO, <br> SERVE: 160 East 89th Street, PMB 4C, <br> New York, NY 10128 | ) |
| DAVID KATZ, <br> SERVE: 160 East 89th Street, PMB 4C, <br> New York, NY 10128 | ) |
| CARMINE AMELIO, <br> SERVE: 160 East 89th Street, PMB 4C <br> New York, NY 10128 | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, N2 Select, LLC ("Plaintiff" or "N2 Select") for its Complaint and Demand for Jury Trial alleges:

## PARTIES

1. Plaintiff is a Missouri limited liability company in good standing with a place of business located at 4100 N. Mulberry Dr., Suite 105, Kansas City, MO 64116.

2. Upon information and belief, defendant N2 Global Solutions, Inc. ("N2 Global") is a corporation organized under and existing under the laws of the State of Delaware, having its principal office and place of business in the City of New York, New York County, New York.

3. Upon information and belief, the corporate address of N2 Global is 160 East 89th Street, PMB 4C, New York, NY 10128.

4. Upon information and belief, defendant Paul Amelio is a resident of the City of New York, New York County, New York.

5. Upon information and belief, the residence address of defendant Paul Amelio is 160 East 89th Street, PMB 4C, New York, NY 10128.

6. Upon information and belief, defendant David Katz is a is a resident of the City of New York, New York County, New York.

7. Upon information and belief, defendant Carmine Amelio is a resident of the City of New York, New York County, New York.

**JURISDICTION AND VENUE**

8. All causes of action alleged in this Complaint arise out of Defendants' conduct within, the transaction of business in, and entering into agreements in, Kansas City, Missouri and elsewhere. Accordingly, this Court has subject-matter jurisdiction and personal jurisdiction over all parties under Mo. Rev. Stat. § 506.500.

9. The jurisdiction of this Court and venue in this district are proper under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000).

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

10. Upon information and belief, defendant Paul Amelio is an individual with a background in marketing, Carmine Amelio is an individual whose background is unknown, and David Katz is an individual with a background in mobile phones (Paul Amelio, Carmine Amelio and David Katz are from now on referred to as the "Individual Defendants").

11. The Individual Defendants claim that they conceived of the idea to put smart-phone-like technology into a wall socket, which, among other things, would help monitor, manage, and reduce energy consumption.

12. Upon information and belief, the Individual Defendants formed N2 Global on October 4, 2010.

13. In or around 2014, the Individual Defendants added Karl Kilb ("Kilb") was named N2's President and Chief Executive Officer, and Board Member with a 15% equity interest in founder's stock.

14. Upon information and belief, Kilb is a well-known entrepreneurial law professor at Fordham Law School and Bloomberg LP's General Counsel and Risk Manager for many years. His inclusion on the Board of Directors was to use his extensive contacts and credibility to raise capital for N2 Global's technology to reach fruition.

15. Upon information and belief, and with the substantial assistance of Kilb, N2 Global engaged contract engineering firms and contract manufacturers in the Rochester, New York area to design and manufacture the devices. Kilb utilized his expertise to develop a pipeline of companies interested in using the N2 Global technology. Kilb also developed a robust pipeline of companies who were interested in deploying N2 Global technology, which was featured at the Advanced Energy Conference at the Jacob K. Javits Convention Center in New York City in April 2016.

16. Furthermore, upon information and belief, Kilb negotiated and drafted an agreement with the New York University's Tandon School of Engineering to provide independent lab testing and validation of the products.

17. Despite Kilb's work in advancing the N2 Global technology, upon information and belief in November 2015, the Individual Defendants removed Kilb from the Board of Directors, without the holding of a properly called meeting, and eliminated his equity interest in founder's stock. The Individual Defendants then, upon information and belief, installed Carmine Amelio, defendant Paul Amelio's brother, as the third Director.

18. Upon information and belief, Kilb was not immediately told of this action and remained referred to potential investors as a co-founder, Board Member, President, and Chief Executive Officer.

19. Despite its efforts, and exacerbated by Kilb's removal, by September 2017, N2 Global needed more capital.

20. On or about September 8, 2017, and based on N2 Global's fraudulent, falsified, misleading, or incomplete information, Plaintiff and N2 Global entered a Terms for Private Placement of Series Seed Preferred Stock of N2 Global Solutions, Inc. (the "First Term Sheet"), and Plaintiff sent two wire transfers of $100,000 each, totaling $200,000.

21. Under the First Term Sheet, N2 Global was to use the proceeds from the sale of Series Seed to acquire molds sufficient to allow it to build test sets and complete the Beta model of its "SandBox"[1] product. The First Term Sheet also designated Plaintiff a "Major Investor," allowing it to receive standard financial information and inspection rights.

22. Before Plaintiff funded under First Term Sheet, Defendants never told Plaintiff that N2 Global removed Kilb as a Board Member, President, and Chief Executive Officer, and eliminated his equity interest without his knowledge or agreement.

---

[1] N2 Global's SandBox is described on the N2 Global website as a wall socket that purportedly retrofits "seamlessly into existing, legacy standard 'in wall' electrical boxes anywhere in the work and part of a system that wirelessly captures data and produces cognitive analytics for more informative decisions and smarter strategic actions."

4

23. Before Plaintiff funded the Term Sheet, Defendants failed to accurately portray N2 Global's business, including its time to market for SandBox, its software, and intellectual property.

24. Before Plaintiff funded under the First Term Sheet, Defendants failed to provide accurate financial information to Plaintiff. To the contrary, the financial information provided was fraudulent, falsified, misleading, or incomplete. And despite demands, Defendants have refused to provide useful information to establish the specific fraudulent, falsified, misleading, or incomplete financial entries. In fact, the financials received were disorganized, incomprehensible, or nonexistent, making recognition of material facts nearly impossible.

25. Before Plaintiff funded the Term Sheet, Defendants failed to disclose numerous material disclosure, including upon information and belief, that defendant Paul Amelio filed for bankruptcy protection in 2015, and that in the spring of 2017, significant investors filed a shareholder derivative action against the Defendants for numerous claims including breaches of fiduciary duties and demanding an accounting/and the appointment of a receiver (Supreme Court of New York, Rockland County, Index No. 03202/2017).

26. Despite N2 Global's stated intention, N2 Global failed to purchase molds with the funds. Instead, Defendants used the funds for personal expenses, old accounts payable and other like items, using the N2 Global corporate account as a personal piggy bank and in total contradiction to the purposes represented to Plaintiff. For example, N2 used the funds to pay for:

   a. "Legal services" to for Joseph F. Daniels, upon information and belief a partner with McCarter & English;

   b. "Financial services" to Michael Temps, upon information and belief an accounting specialist at Sperry Associates Federal Credit Union;

5

c. "Overhead expenses," "office maintenance," "office utilities," "office Time Warner," internet, and cable to defendant Paul Amelio despite N2 operating out of defendant Paul Amelio's personal residence;

d. Various credit card payments for unspecified charges; and

e. "Office and miscellaneous expenses" of multiple meals, including Chipotle, 7-11, Green Café, and Grand Hyatt, periodicals, cell phones, and MetroCards and other commuting expenses.

## COUNT I
## Breach of Contract
## (N2 Global)

27. Plaintiff incorporates by reference each allegation and fact set forth above as if fully set forth herein.

28. Plaintiff and the N2 Global entered into the First Term Sheet whereby the N2 Global was to use the proceeds from the sale of Series Seed to acquire molds sufficient to allow it to build test sets and complete the Beta model of its SandBox product.

29. N2 Global breached their contracts with Plaintiff by, among other things, failing to use the proceeds from the sale of Series Seed to acquire the molds, or otherwise use the proceeds on other corporate affairs, but utilized the proceeds to fund personal expenses and other non-corporate related activities.

30. As a direct and proximate result of N2 Global's breach of the First Term Sheet, Plaintiff has been damaged in the amount of the $200,000 and interest funded under the First Term Sheet.

31. As a direct and proximate result of N2 Global's breach of the First Term Sheet, Plaintiff has suffered non-economic damages, including damages to Plaintiff's goodwill and

reputation in the industry.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor and against N2 Global for Breach of Contract; award Plaintiff damages in an amount proved at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT II
### Fraudulent Misrepresentation/Inducement
### (All Defendants)

32. Plaintiff incorporates by reference each allegation and fact set forth above as if fully set forth herein.

33. Defendants, by and through their representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information described above, represented an alternative reality to defendant N2 Global's actual business.

34. Plaintiff reasonably relied on the Defendants' representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information described above, funding the First Term Sheet for $200,000.

35. However, Plaintiff has learned that the Defendants' representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information provided, were false and, upon information and belief, the representations were knowingly false at the time they were made, or, in the case of the omission of the pending shareholders' derivative lawsuit, not made.

36. The Defendants knew or should have known the above representations were false at the time made.

37. Further, the Defendants knowingly, intentionally, and willfully refused to provide accurate financial information, and misrepresented or omitted the material disclosures listed above.

7

38. Plaintiff would have never funded under the First Term Sheet if it had known the accurate details of N2's business.

39. Plaintiff's damages include, among other things, the $200,000 funded under the First Term Sheet, loss of goodwill and reputation, and other incidental and consequential damages.

40. Plaintiff is further entitled to punitive damages as a result of the Defendants' intentional, willful, and reckless disregard for the truth.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants for Fraudulent Misrepresentation/Inducement; and award Plaintiff damages in an amount to be proven at trial; award Plaintiff punitive damages, fees and costs incurred herein; and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT III
**Negligent Misrepresentation**
**(All Defendants)**

41. Plaintiff incorporates by reference each allegation and fact set forth above as if fully set forth herein.

42. Defendants, by and through their representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information described above, represented an alternative reality to defendant N2 Global's actual business.

43. Plaintiff reasonably relied on the Defendants' representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information described above, funding the First Term Sheet for $200,000.

44. However, Plaintiff has learned that the Defendants' representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information provided, were false and, upon information and belief, the representations were false at the time

made.

45. The Defendants knew or should have known the above representations were false at the time made.

46. Further, the Defendants knowingly, intentionally, and willfully refused to provide accurate financial information, and misrepresented or omitted the material disclosures listed above.

47. Plaintiff would have never funded under the First Term Sheet if it had known the accurate details of N2's business.

48. Plaintiff's damages include, among other things, the $200,000 funded under the First Term Sheet, loss of goodwill and reputation, and other incidental and consequential damages.

49. Plaintiff is further entitled to punitive damages as a result of the Defendants' intentional, willful, and reckless disregard for the truth.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants for Negligent Misrepresentation; and award Plaintiff damages in an amount to be proven at trial; award Plaintiff punitive damages, fees and costs incurred herein; and grant Plaintiff such other relief as this Court deems just and proper.

### COUNT IV
### Breach of Fiduciary Duty
### (All Defendants)

50. Plaintiff incorporates by reference every allegation and fact set forth above as if fully set forth herein.

51. Plaintiff and the N2 Global entered the First Term Sheet whereby the N2 Global N2 Global was to use the proceeds from the sale of Series Seed to acquire molds sufficient to allow it to build test sets and complete the Beta model of its SandBox product.

52. Under the First Term Sheet, the Defendants owed Plaintiff fiduciary duties,

9

including the duties of good faith, loyalty, and no self-dealing.

53. The Defendants breached their fiduciary duties owed to Plaintiff.

54. The Defendants breached their fiduciary duties to Plaintiff by, among other things, through their representations and misrepresentations, including, the fraudulent, falsified, misleading, or incomplete information, representing an alternative reality to defendant N2 Global's actual business, and knowingly, intentionally, and willfully refusing to provide accurate financial information, and misrepresented or omitted the material disclosures listed above, and the misuse of the funds provided by Plaintiff.

55. Plaintiff suffered damages as a direct and proximate result of the Defendants' breach of fiduciary duties.

56. Plaintiff's damages include, among other things, the $200,000 funded under the First Term Sheet, loss of goodwill and reputation, and other incidental and consequential damages.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants for Breach of Fiduciary Duties; and award Plaintiff damages in an amount to be proven at trial; award Plaintiff punitive damages, fees and costs incurred herein; and grant Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Under Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

KENNYHERTZ PERRY, LLC

/s/ Braden M. Perry

Braden M. Perry (Mo. Bar #53865)
420 Nichols Road, Suite 207
Kansas City, MO 64112
Phone: (816) 527-9447
Fax: (855) 844-2914
braden@kennyhertzperry.com
Counsel for Plaintiff N2 Select, LLC

and

AEGIS LAW

/s/ Arthur E. Fillmore, II

Arthur E. Fillmore, II (Pro Hac Pending)
1600 Genessee St., Suite 460
Kansas City, MO 64106
Phone: (816) 929-8623
Fax: (816) 817-1466
afillmore@aegisps.com
Counsel for Plaintiff N2 Select, LLC