IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| N2 SELECT, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-00001-DGK |
| | ) | |
| N2 GLOBAL SOLUTIONS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO DISMISS LAWYER DEFENDANTS FOR LACK OF PERSONAL JURISDICTION

This case arises from an alleged scheme by a group of individuals living in New York to defraud a group of investors living in Kansas City, Missouri. Plaintiffs, a limited liability company and eight individual investors,[1] allege Defendants engaged in fraud, misrepresentation, breach of fiduciary duty, breach of contract, and legal malpractice by failing to disclose crucial information, embezzling from the company, and creating fraudulent documents.

Now before the Court is Defendants Joseph F. Daniels ("Daniels") and his law firm, McCarter & English, LLP's ("McCarter & English") (collectively "the Lawyer Defendants") joint Motion to Dismiss for lack of personal jurisdiction (Doc. 11). Because Plaintiffs have failed to carry their burden of proving facts sufficient to make a prima facie showing of personal jurisdiction over the Lawyer Defendants, the motion is GRANTED.

---

[1] The Plaintiffs are N2 Select, LLC ("N2 Select"), Kevin and Jeanette Prenger, Douglas and Terri Bleam, Darren and Shannon Prenger, and Joseph and Alena Prenger. N2 Select is a limited liability company created by some of the other Plaintiffs to facilitate investment in N2 Global.

**Standard**

Personal jurisdiction concerns "whether the controversy or the defendant has sufficient contracts, ties, or relationships with the forum to give the court the right to exercise judicial power over the defendant . . . ." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* (internal quotations and ellipses omitted). In this case, Plaintiffs allege the Court possesses specific jurisdiction over the Lawyer Defendants.[2]

In a diversity case such as this one, personal jurisdiction exists only to the extent permitted by the forum state's "long-arm statute" and the Due Process Clause of the Fourteenth Amendment. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012); *see* Fed. R. Civ. P. 4(k)(1)(A). Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, contract, or commit a tort within the state. *Viasystems,* 646 F.3d at 593; Mo. Rev. Stat. § 506.500. These categories are construed broadly, and the statute provides jurisdiction to the full extent permitted by the Due Process Clause. *Id.*

"[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," a federal court need only consider "whether the assertion of personal jurisdiction would violate" due process. *Aly v. Hanzada for*

---

[2] Plaintiffs allege "this is a suit arising directly out of the Lawyer Defendants' contacts to the forum and thus specific jurisdiction." Resp. at 11 (Doc. 19).

*Import & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (quotations and citations omitted).³ The court considers whether there is "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Id.* (quotations and citations omitted). This decision is made by weighing five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties," with the court giving "significant weight" to the first three factors. *Id*.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant is subject to jurisdiction within the state. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Once a motion has been filed, the parties may submit evidence, such as affidavits, to bolster their positions. *Id*. The plaintiff bears the burden of proof and must establish jurisdiction by a preponderance of the evidence.⁴ *Id*. Where, as here, the case is at the motion stage, the court may

---

³ The Court recognizes that an Eighth Circuit decision has cautioned against collapsing these two inquiries into one because the Missouri Supreme Court analyzes these questions separately. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011) (quoting *Bryant v. Smith Interior Design Grp*., 310 S.W.3d 227, 231 (Mo. Banc 2001)). Subsequent Eighth Circuit decisions, however, have considered only whether the assertion of personal jurisdiction violates due process. *See*, *e.g.*, *Aly v. Hanzada for Import & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015)).

⁴ A district court has considerable procedural leeway in choosing how to decide a Rule 12(b)(2) motion. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may receive affidavits and other material to determine the jurisdictional facts; it may hold a hearing and hear oral testimony; it may defer ruling on the motion until the parties have had an opportunity to conduct discovery on the issue; or it may leave the fact issues for the jury to decide during a trial on the merits. *Id*.

not dismiss for lack of personal jurisdiction if the evidence, viewed in the light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise over the defendant is proper. *Id*.

**Background**

For purposes of resolving the pending motion, the Court finds the relevant jurisdictional facts, viewed in the light most favorable to Plaintiffs, to be as follows. These facts are based on allegations in the Second Amended Complaint ("the Complaint") (Doc. 52),[5] the evidence (affidavits and emails) submitted by the parties, and reasonable inferences.

From as early as 2009 until the present, Defendants Paul Amelio ("Amelio") and David Katz ("Katz") and others operated Defendant N2 Global Solutions, Inc. ("N2 Global") to defraud Plaintiffs out of millions of dollars by claiming they had developed a wall socket technology that could significantly reduce and manage energy consumption as well as detect noxious gases, smoke, moisture, and mold. Katz and Amelio embezzled most of the money Plaintiffs invested, preventing the company from commercializing its technology. Katz and Amelio provided fraudulent investor documents, including multiple sets of conflicting bylaws, as well as fraudulent financial statements, capitalization tables, purchase orders, and tax returns.

The fraud was allegedly carried out with the assistance of N2 Global's attorney, Daniels, who manufactured and/or backdated a series of fraudulent documents, including board resolutions, bylaws, and investment documents. Daniels used his position as a partner with the law firm of McCarter & English to provide a credible front. He was successful in inducing investment, and

---

[5] Although the Second Amended Complaint was filed after the Lawyer Defendants filed their motion to dismiss, it is in relevant part identical to the Amended Complaint (Doc. 3) that was in force at the time the Lawyer Defendants filed their motion. The Court uses the Second Amended Complaint to avoid needless re-litigation of the personal jurisdiction issue. *See* the Lawyer Defendants Resp. to Show Cause Order (Doc. 47) ("The proposed second amended complaint does not materially change the allegations concerning the Lawyer Defendants, including with respect to personal jurisdiction issues. Consequently, if leave to file the second amended complaint is granted, the Lawyer Defendants respectfully ask that their pending motion to dismiss for lack of personal jurisdiction and accompanying memoranda and exhibits be deemed applicable to second amended complaint and ruled upon accordingly without the need for re-filing of the motion.").

he continued to induce investment even after he was on actual notice of troubling litigation against N2 Global.

The Lawyer Defendants have no ties to Missouri. Daniels is a New York attorney and resident who has not worked in Missouri. McCarter & English is a New Jersey limited liability partnership with its principal place of business in Newark, New Jersey, and an office in New York, New York. It is not registered with the Missouri Secretary of State to do business within Missouri, nor does it employ individuals in Missouri, have an office in Missouri, or own any Missouri real estate.

The Lawyer Defendants acted as legal counsel to N2 Global. Although they communicated with a Kansas City-based attorney, Art Fillmore ("Fillmore"), who represented Plaintiff N2 Select and other Plaintiffs,[6] they never provided or sent letters or documents to Plaintiffs in connection with their work for N2 Global or otherwise. The Lawyer Defendants were located outside of Missouri during these communications, and N2 Select's representatives were inside Missouri.

These communications were as follows:

1. An August 15, 2017, chain email exchange between Mark Nikolsky ("Nikolsky"), a partner at McCarter & English; Fillmore; Doug Bleam ("Bleam"); and Katz. These emails introduced Nikolsky to Fillmore and arranged a convenient time for them to discuss N2 Global's patents and other intellectual property in a phone call.

2. The phone call between Nikolsky and Fillmore, during which the two discussed N2 Global's intellectual property.

---

[6] The evidence on the record indicates Fillmore represented Plaintiff N2 Select. The limited evidence before the Court also suggests he represented Plaintiffs Jeanette Prenger and Doug Bleam. For example, in one email sent to Jeanette Prenger and others after he had negotiated a term sheet, Fillmore wrote, "Jeanette, I am comfortable with you signing this and moving forward with the funding of N2 Select, which is now formally organized in MO." Email, Doc. 12-2 at 16.

3. An August 16, 2017, chain email exchange involving Fillmore, Nikolsky, Katz, and Paul Amelio regarding the creation of a short document summarizing N2 Global's intellectual property.

4. A phone call on August 22, 2017, between Fillmore, Katz, Amelio, and Daniels during which they agreed on a term sheet for an investment by N2 Select in N2 Global.

5. After this call, an email exchange occurred involving Fillmore, Kevin Prenger, Bleam, Daniels, Katz, Amelio, and Tammy White. In it, Fillmore announced that they had reached agreement on a term sheet. Fillmore stated he was now "comfortable" with Jeanette Prenger moving forward and funding N2 Select.

6. An email exchange on October 30, 2017, between Fillmore and Nikolsky. Fillmore asked Nikolsky to resend the document summarizing N2 Global's intellectual property because he was creating an investor package for N2 Select and wanted to include the summary in it.

7. An email exchange between Fillmore and Nikolsy on October 31 and November 1, 2017. Fillmore asked Nikolsky if he had been able to find the summary. Nikolsky responded by apologizing for the delay, attaching the summary, and providing a short update on the progress of N2 Global's pending patent applications.

The Complaint asserts five claims against the Lawyer Defendants, all torts. Count VI alleges legal malpractice and professional negligence; Count VII alleges fraudulent misrepresentation and inducement; Count VIII alleges fraudulent concealment and nondisclosure; Count IV alleges negligent misrepresentation; and Count X alleges breach of fiduciary duty. None of the counts identifies any specific tortious act the Lawyer Defendants allegedly committed in Missouri.

## Discussion

The Court's analysis is limited to whether the assertion of personal jurisdiction over the Lawyer Defendants violates due process because that issue is dispositive.

The first three factors in the five-factor test tilt heavily towards finding that exercising personal jurisdiction would violate due process. First, the nature and quality of the Lawyer Defendants' contacts with Missouri are limited, insignificant, and do not appear to have played a meaningful role in the alleged fraud. For example, the email chain introducing the two attorneys is immaterial, as is Fillmore's request for Nikolsky to resend the document, and Nikolsky's reply. In fact, none of the communications above, individually or collectively, demonstrates any intent on the Lawyer Defendants' part to conduct business in Missouri, nor are these contacts enough to put the Lawyer Defendants on notice that they should "reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Cromeans v. Morgan Keegan & Co., Inc.*, 2014 WL 1375038, at *6 (W.D. Mo. Apr. 8, 2014) (holding exercising personal jurisdiction over an out-of-state law firm that had incidental email and phone communications with Missouri residents would offend traditional notions of fair play and substantial justice); *cf. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (observing unilateral actions of a party claiming a relationship with a nonresident defendant does not create personal jurisdiction). Second, the number of these contacts is small, seven. Third, the relationship of these contacts to the causes of action against these Defendants is tenuous. Although the Complaint alleges the fraud would not have succeeded without the Lawyer Defendants' assistance, that is not the issue. Specific jurisdiction is not based on the defendants' relationship with the plaintiffs, it is based on the defendants' contacts with the forum state itself.

The last two factors, Missouri's interest in providing a forum for its residents and the relative convenience to the parties, weigh in favor of asserting personal jurisdiction. Missouri has a strong interest in regulating attorney malpractice and preventing its citizens from being defrauded. And given the number of human parties who reside in Missouri, eight, versus the number of human parties who reside in the New York area, four, it is relatively more convenient for this case to be litigated in Missouri. These factors, however, do not outweigh the first three factors, to which the Court attributes "significant weight."

The Court holds Plaintiffs have failed to carry their burden of proving facts sufficient to make a prima facie showing of personal jurisdiction over the Lawyer Defendants, and the Due Process Clause does not permit the exercise of personal jurisdiction over them.

**Conclusion**

For the reasons discussed above, the Lawyer Defendants motion to dismiss for lack of personal jurisdiction (Doc. 11) is GRANTED. Plaintiffs' claims against Defendants Daniels and the law firm of McCarter & English are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date: February 14, 2019  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT