# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| N2 SELECT, LLC, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 4:18-CV-00001-DGK |
| N2 GLOBAL SOLUTIONS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANT PAUL AMELIO'S MOTION TO DISMISS

This case arises from an alleged scheme to defraud a group of investors. Plaintiffs, a limited liability company and eight individual investors based in Kansas City, Missouri,[1] allege the Defendants, who are based in the New York area, engaged in fraud, misrepresentation, breach of fiduciary duty, and breach of contract by failing to disclose crucial information, embezzling from the company, and providing fraudulent documentation.

Now before the Court is pro se Defendant Paul Amelio's ("Amelio") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 81). Amelio, a co-founder of Defendant N2 Global Solutions, Inc. ("N2 Global"), moves to dismiss on three independent grounds: improper venue, improper service of process, and lack of personal jurisdiction. These arguments are without merit, and the motion is DENIED.

---

[1] The Plaintiffs are N2 Select, LLC ("N2 Select"), Kevin and Jeanette Prenger, Douglas and Terri Bleam, Darren and Shannon Prenger, and Joseph and Alena Prenger. Some of the Plaintiffs created N2 Select to facilitate investment in N2 Global.

**I.      Even if valid, the forum selection clause does not justify dismissal.**

Amelio argues the case should be dismissed pursuant to 28 U.S.C. § 1406(a), and presumably Federal Rule of Civil Procedure 12(b)(3), because N2 Global's bylaws contain a forum-selection clause which states:

> [T]he Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, or (iv) any action asserting a claim governed by the internal affairs doctrine. . . .

The Second Amended Complaint alleges that these bylaws are falsified and backdated. The Second Amended Complaint also observes that, in related litigation, a New York court held a forum selection clause Defendants submitted to the court was fraudulent and unreasonable.

The Court need not decide whether the forum selection clause is valid at this time because even if it were valid, this is not grounds to dismiss the case. "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Constr. Co. v. United States Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 55 (2013).

This portion of the motion is denied.

**II.     Plaintiffs properly served Amelio.**

Plaintiffs' process server attempted to serve Amelio at 160 East 89th Street, Apt. 4C, in New York City, which is N2 Global's place of business and, as Amelio acknowledges, his

residence. Conspicuous Service Aff. (Doc. 5); Mot. to Dismiss ¶ 9 (Doc. 81). According to the process server's affidavit, on March 6, 2018, at 10:10 a.m., he knocked on the apartment door and no one answered. Conspicuous Service Aff. The doorman told him someone would be in after 7:00 p.m., so the process server returned at 7:30 p.m. and knocked on the door again. *Id*. No one answered. *Id*. After making reasonable efforts to find someone legally eligible and willing to accept service, the process server affixed a copy of the summons, civil cover sheet, and complaint to the door. *Id*. The next day he mailed the documents to Amelio at the above address in a postpaid wrapper marked "personal & confidential" with no indication that the mailing regarded a legal matter. *Id*. He sent the package via U.S. Postal Service first-class, regular mail. *Id*.

Federal Rule of Civil Procedure 4(e)(1) provides that an individual "may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Since service was made in the state of New York, § 308 of New York's Civil Practice Law & Rules governs service of process. This rule provides that where, with due diligence, service cannot be made on a natural person, service may be made by affixing the summons to the door of the person's "actual place of business" and "by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside . . . that the communication is from an attorney or concerns" a lawsuit. This is precisely the procedure the process server followed, so service was valid.

The Court is unpersuaded by Amelio's argument that service was defective because his building has a policy of not permitting unauthorized party access to residential units, and doormen are not authorized or permitted to receive or deliver legal documents. This assertion is not made

under oath and, even if it were true, that does not mean the process server did not persuade a doorman to admit him in violation of the policy. Accordingly, the Court holds Plaintiffs have demonstrated service on Amelio was proper.

### III. The Court has personal jurisdiction over Defendant.

Personal jurisdiction concerns "whether the controversy or the defendant has sufficient contracts, ties, or relationships with the forum to give the court the right to exercise judicial power over the defendant . . . ." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). Plaintiffs allege the Court possesses specific jurisdiction over Amelio.

In a diversity case such as this one, personal jurisdiction exists only to the extent permitted by the forum state's "long-arm statute" and the Due Process Clause of the Fourteenth Amendment. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012); *see* Fed. R. Civ. P. 4(k)(1)(A). Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, contract, or commit a tort within the state. *Viasystems,* 646 F.3d at 593; Mo. Rev. Stat. § 506.500. These categories are construed broadly, and the statute provides jurisdiction to the full extent permitted by the Due Process Clause. *Id*.

"[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," a federal court need only consider "whether the assertion of personal jurisdiction would violate" due process. *Aly v. Hanzada for Import & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (quotations and citations omitted).[2]

---

[2] The Court recognizes that an Eighth Circuit decision has cautioned against collapsing these two inquiries into one because the Missouri Supreme Court analyzes these questions separately. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011) (quoting *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010)). Subsequent Eighth Circuit decisions, however, have considered only whether the

4

The court considers whether there is "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Id.* (quotations and citations omitted).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant is subject to jurisdiction within the state. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Once a motion has been filed, the parties may submit evidence, such as affidavits, to bolster their positions. *Id.* The plaintiff bears the burden of proof and must make a prima facie showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff must establish personal jurisdiction by a preponderance of the evidence at trial or when the court holds an evidentiary hearing.[3] *Id.* Where, as here, the case is at the motion stage, the court may not dismiss for lack of personal jurisdiction if the evidence, viewed in the light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise over the defendant is proper. *Id.*

In this case, after carefully reviewing the Second Amended Complaint and the evidence on the record, the Court finds Plaintiffs have met their burden of establishing that Amelio has sufficient minimum contacts with Missouri for the Court to exercise personal jurisdiction over him. Although Amelio denies conducting business in Missouri, he concedes that he made one trip

---

assertion of personal jurisdiction violates due process. *See*, *e.g.*, *Hanzada*, 864 F.3d at 849 (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015)).

[3] A district court has considerable procedural leeway in choosing how to decide a Rule 12(b)(2) motion. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may receive affidavits and other material to determine the jurisdictional facts; it may hold a hearing and hear oral testimony; it may defer ruling on the motion until the parties have had an opportunity to conduct discovery on the issue; or it may leave the fact issues for the jury to decide during a trial on the merits. *Id.*

here. Mot. at 3. In fact, Plaintiffs have placed more credible evidence in the record demonstrating Amelio repeatedly reached out to Missouri to commit the allegedly tortious conduct. Plaintiffs submitted affidavits alleging communications between Amelio in New York and Plaintiffs in Kansas City. Additionally, Plaintiffs submitted an affidavit from an attorney stating that he "attended several investor solicitation meetings presented by [Defendant Paul] Amelio and [Defendant David] Katz. *These presentations were all made in Kansas City, Missouri*." Decl. of Arthur E. Fillmore, II at ¶ 8 (Doc. 19-1) (emphasis added). Plaintiff Jeanette Prenger also swore under oath that in 2017, "the Defendants requested that I introduce them to investors in Kansas City," and she subsequently introduced them to various government officials in Missouri and a half-dozen executives in Kansas City who were potential investors. Decl. of Jeanette E. Prenger at ¶ 6 (Doc. 19-3). Amelio's actual presence in Missouri to solicit investors, in combination with his communications sent into the forum, is sufficient to establish personal jurisdiction in Missouri. *See*, *e.g.*, *Bryant v. Smith Interior Design Grp, Inc.*, 310 S.W.3d 224, 235 (Mo. 2010) (holding defendant's actual presence in Missouri for initial negotiations and subsequent communications into the forum established personal jurisdiction).

**Conclusion**

For the reasons discussed above, Defendant Amelio's motion to dismiss (Doc. 81) is DENIED.

**IT IS SO ORDERED.**

Date: March 22, 2019         /s/ Greg Kays
                              GREG KAYS, JUDGE
                              UNITED STATES DISTRICT COURT